1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10  VALENTIN VALLEJO,

11          Plaintiff,                    No. 2:09-cv-03088 KJN

12      v.

13  MICHAEL J. ASTRUE,
    Commissioner of the Social Security
14  Administration,

15          Defendant.                    <u>ORDER</u>

16  _____/

17          The Commissioner of Social Security (the "Commissioner" or "defendant")

18  denied plaintiff Valentin Vallejo's application for a waiver of the repayment of benefit payments

19  improperly made to plaintiff during the period of August 1995 through March 1996 (the

20  "overpayment period").  Plaintiff, a recipient of Disability Insurance Benefits under Titles II and

21  XVI of the Social Security Act (the "Act"), seeks judicial review of the Commissioner's final

22  decision.

23          In his motion for summary judgment, plaintiff principally contends that the

24  Administrative Law Judge (the "ALJ") in this case erred by discrediting plaintiff's testimony.

25  According to plaintiff, the ALJ discredited plaintiff's testimony due to a mistaken belief that

26  various documents in the record <u>predate</u> the overpayment period, and by choosing to "assume"

1

plaintiff's knowledge of Social Security work rules despite a lack of conflicting evidence in the record.  (Pl.'s Mot. for Summ. J., Dkt. No. 16.)  Plaintiff, a native Spanish speaker, also challenges the ALJ's decision on the grounds that the ALJ did not give appropriate weight to various items of evidence, including plaintiff's limited ability to comprehend English.  (Id.) Plaintiff contends that these and other defects render the ALJ's decision unsupported by substantial evidence.  (Id.)  The Commissioner filed a cross-motion for summary judgment. (Def.'s Opp'n & Cross-Motion for Summ. J., Dkt. No. 18.)

For the reasons stated below, the court grants plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.[1]

I.      BACKGROUND

        A.      Procedural Background

                On October 3, 1996, the Social Security Administration (the "SSA") sent plaintiff a notice stating that his disability ended due to plaintiff's performance of substantial work from August 1995 to March 1996.  (Administrative Record ("AR") 47.)  The notice listed plaintiff's various months of work  and explained the "trial work period" and "extended period of eligibility."  (AR 47-49.)

                **More than nine years later**, in September 2005, the SSA sent plaintiff a "Notice of Change in Benefits" that stated: "You should not have been paid for the months 08/1995 through 03/1996.  Since you were paid when you should not have been, you have been paid $5,212.00 too much."  (AR 130.)

                Plaintiff filed a Request for Waiver of Overpayment on November 22, 2005.  (AR 134-41.)  That form, which was signed by plaintiff, states that "I was not at fault because I notified the Administration building on Folsom on 10/4/94 that I was employed.  Susan told me

---

[1]  This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge.  (Dkt. Nos. 7, 11.)  This case was reassigned to the undersigned by an order entered February 9, 2010.  (Dkt. No. 9.)

1  my benefits would not be affected.  On or about Nov. or Dec. my . . . SSI was stopped and I

2  continued to receive my Social Security benefits."  (AR 135, 140.)

3          Plaintiff's request was denied on January 12, 2006, by way of an "Overpayment

4  Information" notice identifying the overpayment amount as $8,236.  (AR 148.)  On January 26,

5  2006, plaintiff had a personal conference with an SSA staff member regarding the overpayment.

6  (AR 148-51.)  At that conference, plaintiff signed a statement reflecting his agreement to repay

7  the overpayment of $8,236 "by monthly offsets in the amount of $50.00 starting 3/06."  (AR 150-

8  51.)  On February 7, 2006, the SSA issued another notice to plaintiff confirming the denial of his

9  request for waiver of the repayment.  (AR 154.)  Plaintiff requested a hearing before an ALJ.

10  (AR 156.)

11          On May 11, 2007, plaintiff participated in a hearing before the ALJ in

12  Sacramento, California.  (AR 207.)  A Spanish language interpreter was present, and plaintiff

13  was represented by counsel.  (AR 19, 207.)  On July 20, 2007, the ALJ issued a decision

14  unfavorable to plaintiff.  (AR 19-22.)  Through his counsel, plaintiff filed a request for review by

15  the SSA Appeals Council.  After plaintiff's appeal was apparently misdirected at the office of the

16  Appeals Council, ultimately, on September 11, 2009, the Appeals Council issued a notice

17  denying review and the ALJ's decision became the final decision of the Commissioner.  (AR 4-

18  7.)

19      B.    Summary of Facts[2]

20          Plaintiff began receiving benefits in September of 1987.  (AR 142.)  In 1995,

21  plaintiff was receiving both Title II disability insurance benefits ("Title II benefits") and Title

22  XVI Supplemental Security Income ("SSI").  (AR 142, 215, 219.)  On two separate occasions

23  plaintiff began working  while he was receiving these benefits.  First, plaintiff worked for

24  Silkscape, Inc. in August and September 1992.  (AR 45-47).  Second, plaintiff worked for

25

26      [2]  This recitation of the factual background is not intended to be exhaustive, and the
parties are familiar with the facts giving rise to this dispute.

3

1   Sacramento Handicapped Parking Patrol from October 1994 through April 1996.  (AR 41-44,

2   215.)  Plaintiff's periods of employment are undisputed.

3           Within two weeks of starting his employment at Sacramento Handicapped

4   Parking Patrol, plaintiff visited an SSA office and informed an SSA representative that he had

5   become employed.  (AR 55, 135-36, 215.)  Plaintiff made this report to the SSA because,

6   according to plaintiff, "[i]nitially when I applied for Social Security I had the responsibility that if

7   I worked in the future I would have to let them know, and that's what I've done always."  (AR

8   217.)  Plaintiff testified that he thought that reporting his employment to the SSA would result in

9   the cessation of his benefits checks.  (AR 226.)  However, plaintiff testified that he did not

10  understand the benefits-related concepts of the "trial work period"[3] or the "extended period of

11  eligibility."  (AR 218.)

12          After plaintiff reported his employment to the SSA in October 1994, plaintiff

13  stopped receiving SSI benefits.  (AR 215.)  Plaintiff believed that his SSI benefits stopped

14  "[b]ecause I was working."  (AR 217.)  However, plaintiff continued to receive Title II benefits

15  payments from August 1995 through March 1996, known herein as the "overpayment period."

16  (AR 215.)

17          Plaintiff did not notify the SSA that he was continuing to receive Title II benefits.

18  (AR 226.)  Plaintiff testified that he did not do so because he believed his continued receipt of

19  Title II benefits was permissible.  (AR 55, 99, 135, 140, 217-18.)  Plaintiff's belief arose from his

20  assumption that the SSA reacted to his report of employment by intentionally ceasing some of his

21  benefits payments and intentionally continuing to make others.  (AR 55, 99, 135, 140, 217-18.)

22  _____

23          [3] An individual who is disabled is entitled to a "trial work period," which means that the
    individual may work for up to nine months while still receiving benefits.  20 C.F.R.
24  § 404.1592(a).  The nine months need not be consecutive.  Id.  The individual remains entitled to
    benefits during the trial work period even though he is working.  Id.  An individual remains
25  entitled to benefits for the month when his trial work period ends and for two months after
    whether he works in those months or not, but will no longer be entitled to benefits if he continues
26  to work after that period.  20 C.F.R. § 404.1592a(a)(2)(i).

1    In other words, plaintiff assumed that after he reported his employment, the SSA stopped his SSI

2    benefits because plaintiff was no longer entitled to them, but continued his Title II payments

3    because plaintiff remained entitled to them.  (AR 55, 99, 135, 140, 217-18.)

4        Plaintiff's assumption was bolstered by his knowledge that some of his co-

5    workers, who were also disabled, continued to receive their Social Security checks.  (AR 217-18,

6    226.)  Plaintiff's assumption was further bolstered by the fact that a representative of

7    Sacramento Handicapped Parking Patrol, "Susan," told him that his benefits would not be

8    affected by his being employed there.  (AR 135, 140.)

9        It is undisputed that plaintiff received Title II benefits payments during the

10    overpayment period.  It is also undisputed that plaintiff's employment during that period

11    rendered him ineligible to receive such payments, given that his total months of employment

12    exceeded the "trial work period" starting in August 1995.  The undisputed overpayment amount

13    is $8,236.  (AR 148, 150-51.)

14        C.    Summary of the ALJ's Findings

15        Within his decision (the "ALJ's Decision"), the ALJ reached two primary

16    conclusions and found that both of them supported an ultimate finding that plaintiff was at fault

17    within the meaning of 20 C.F.R. 404.507.[4]  (AR 19-22.)

18        First, the ALJ expressly concluded that he was "unable to credit" plaintiff's

19    testimony.  (AR 21.)  Specifically, the ALJ was "unable to credit" plaintiff's representation that

20    "he had to rely on friends and his employer for information on how working affects his receipt of

21    disability insurance benefits, because Social Security failed to communicate with him in Spanish,

22    which is the only language he understands."  (Id.)  The ALJ discredited this testimony because he

23

24        [4]  As described in more detail below, "fault" may arise in any of the following ways: (a)
from an incorrect statement made by the recipient that he "knew or should have known to be
25    incorrect," (b) from failure to furnish information that he "knew or should have known to be
material," or (c) from acceptance of a payment that he "either knew or could have been expected
26    to know was incorrect."  20 C.F.R. 404.507.

5

1  found that "the evidence shows that [plaintiff] was able, in some way, to interpret notices from

2  Social Security and to understand what the notices were saying. . . ." (Id.)  The ALJ concluded

3  that there was "no support" for plaintiff's testimony that "he did not understand what Social

4  Security was informing him of and that he had to rely on friends or employers for information

5  about Social Security."  (Id.)

6        Second, the ALJ also determined that he was "unable to credit" plaintiff's

7  testimony that "he was not informed by Social Security of what a trial work period or extended

8  period of eligibility are." (AR 21.)  The ALJ was also "unable to credit" plaintiff's testimony

9  that he "had no idea that his work could affect his disability insurance benefits."  (Id.)  The ALJ

10  discredited this testimony because, when someone had improperly reported earnings under

11  plaintiff's Social Security Number, "the record shows that Social Security had contacted

12  [plaintiff] in 1992, 1996, and in 1997, about work and earnings on his Social Security record and

13  how these earnings affected his benefits."  (Id. (citing Exhibits 7, 8, 9, 10, and 20).)  The ALJ

14  concluded that "[t]his evidence can reasonably be seen as showing [plaintiff knew] that his work

15  and earnings did in fact affect his receipt of disability insurance benefits, separate from its affect

16  on his receipt of SSI benefits."  (Id.)

17        Based on these two adverse credibility determinations, the ALJ determined that

18  plaintiff "cannot be found without fault in causing the overpayments" at issue.  (Id.)  The ALJ

19  then concluded that "it is reasonable to assume that the appellant was informed about how his

20  work and earnings affected his eligibility for disability insurance benefits."  (Id. at 22.)  The ALJ

21  also concluded that plaintiff "could have been expected to know that the benefits paid to him in

22  August 2005 through March 2006 were incorrect."[5]  (Id.)

23  ////

24

---

25     [5]  The ALJ's reference to "August 2005 through March 2006" appears to have been a
   typographical error by the ALJ.  It is undisputed that the period for which plaintiff received
26  overpayments was August 1995 through March 1996.  (Pl.'s Mot. for Summ. J. at 2, 4-5.)

II.      ISSUES PRESENTED

       The central issue is whether, after having timely reported his employment to the SSA, and after the SSA stopped paying plaintiff's SSI benefits but continued paying his Title II benefits, plaintiff knew or should have known that his continued receipt of Title II benefits was improper.  20 C.F.R. § 404.507.  If plaintiff knew or should have known that his continued receipt of Title II benefits was improper, his failure to make a follow-up report to the SSA regarding these payments would amount to "fault" in connection with these overpayments.

       Because the "fault" determination in this particular case turns on what plaintiff knew or should have known during the period he was overpaid, Anderson v. Sullivan, 914 F.2d 1121, 1122 (9th Cir. 1990); 20 C.F.R. § 404.507, this case turns on the ALJ's credibility findings and the bases therefor.

       The ALJ made two separate adverse credibility determinations and explained that he was "unable to credit" various representations by plaintiff.  (AR 21.)  Plaintiff contends that the ALJ committed several errors such that neither of these two credibility determinations nor the conclusions resulting therefrom are supported by substantial evidence.  First, plaintiff argues that the ALJ erred by "failing to articulate whether or not he was using the subjective standard required  . . . in determining whether or not Plaintiff was at fault in causing the overpayment." (Pl.'s Mot. for Summ. J. at 7.)

       Second, plaintiff argues that the ALJ arbitrarily discredited plaintiff's statement that he did not understand the trial work period or the impact of work on his Title II benefits. (Pl.'s Mot. for Summ. J. at 8, 10.)  Plaintiff argues that the ALJ's adverse credibility determination was based on the ALJ's erroneous belief that Social Security notices in the record *predated* plaintiff's overpayment in August 1995 through March 1996, such that plaintiff could be charged with knowledge of the contents of those notices.  (Id.)  Plaintiff also argues that the ALJ failed to point to anything in the record suggesting that the SSA actually gave notices to plaintiff (in either English or Spanish) that would have informed him about the trial work period

1     or the work rules <u>during or before</u> the overpayment period.  (Pl.'s Mot. for Summ. J. at 10.)

2     Plaintiff contends that the ALJ's credibility determination resulted when the ALJ arbitrarily

3     "assumed" that plaintiff understood the Act's operation in the face of directly contrary evidence.

4     (<u>Id.</u> at 9-10.)

5          Finally, plaintiff contends that the ALJ failed to specify the amount of weight he

6     gave to each item of evidence he considered in reaching his conclusions, and therefore did not

7     fully explain the legal and factual bases for his two credibility determinations.  (<u>Id.</u> at 11.)

8     III.     <u>STANDARD OF REVIEW</u>

9          A reviewing court must affirm the ALJ's findings of fact with respect to

10     overpayment if the findings are supported by "substantial evidence," and the proper legal

11     standards were applied.  42 U.S.C. § 405(g); <u>Albalos v. Sullivan</u>, 907 F.2d 871, 873 (9th Cir.

12     1990); <u>Anderson</u>, 914 F.2d at 1122-24; <u>Harrison v. Heckler</u>, 746 F.2d 480, 481 (9th Cir. 1984).

13     The "substantial evidence" standard of review has been described as "highly deferential."

14     <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009).

15          "Substantial evidence means more than a mere scintilla but less than a

16     preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

17     support a conclusion."  <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222 (9th Cir.

18     2009) (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995) (internal quotation marks

19     omitted)); <u>accord</u> <u>Valentine</u>, 574 F.3d at 690.  Findings of fact that are supported by substantial

20     evidence are conclusive.  42 U.S.C. § 405(g); <u>McCarthy v. Apfel</u>, 221 F.3d 1119, 1125 (9th Cir.

21     2000).  However, the reviewing court "must consider the entire record as a whole and may not

22     affirm simply by isolating a 'specific quantum of supporting evidence.'"  <u>Ryan v. Comm'r of</u>

23     <u>Soc. Sec. Admin.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting <u>Robbins v. Soc. Sec. Admin.</u>,

24     466 F.3d 880, 882 (9th Cir. 2006)); <u>accord</u> <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir.

25     2007).  The evidence supporting a decision must be "such relevant evidence as a reasonable mind

26     might accept as adequate to support conclusion."  <u>Lewin v. Schweiker</u>, 654 F.2d 631, 633 (9th

1   Cir. 1981); accord Rand v. Sullivan, 924 F.2d 159, 161 (9th Cir. 1990).

2          "To determine whether substantial evidence supports the ALJ's decision, [a court]

3   review[s] the administrative record as a whole, weighing both the evidence that supports and that

4   which detracts from the ALJ's conclusion." Andrews, 53 F.3d at 1039.  Where the evidence is

5   "susceptible to more than one interpretation," the court must uphold the Commissioner's

6   decision. Id. at 1039-40.  However, a failure to make adequate findings would at least necessitate

7   a remand for a redetermination of fault. Lewin, 654 F.2d at 637.  "If additional proceedings can

8   remedy defects in the original administrative proceedings, a social security case should be

9   remanded." Id.  If reliance has been placed on one portion of the record to the disregard of

10  overwhelming evidence to the contrary, the reviewing court must decide against the Secretary.

11  Harrison, 746 F.2d at 482-83; Lewin, 654 F.2d at 635.  Where the claimant's credibility is a

12  critical factor in the Commissioner's decision, an implicit finding is insufficient; a court must

13  remand if there is no explicit finding as to credibility.  Albalos, 907 F.2d at 873 (citing Lewin).

14         Although credibility decisions are for the Commissioner to decide, such decisions

15  cannot stand where there is a "total absence of contradictory evidence." Lewin, 654 F.2d at 635-

16  36.  "[A]n examiner's findings should be as comprehensive and analytical as feasible and, where

17  appropriate, should include a statement of subordinate factual foundations on which the ultimate

18  factual conclusions are based, so that a reviewing court may know the basis for the decision . . . .

19  It is incumbent upon the examiner to make specific findings." Id.  While an ALJ may choose to

20  disbelieve a claimant's testimony, such testimony "must be considered seriously" without being

21  "entirely discounted because of weak (or no) objective findings." Id.  An ALJ's rejection of a

22  claimant's testimony must be accompanied by a specific finding to that effect, supported by a

23  "specific, cogent reason for the disbelief." Id.  Further, in certain circumstances an ALJ's factual

24  errors may undermine his conclusions or credibility determinations, and may render them

25  unsupported by substantial evidence or directly contradicted by the record. Newman v. Astrue,

26  No. 08cv2066 BTM (CAB), 2010 WL 2523948, at *5-6 (S.D. Cal. June 18, 2010) (unpublished)

9

1  (discussing ALJ's factual errors and applying <u>Lewin</u>).

2  IV.  <u>ANALYSIS</u>

3     When a claimant receives more disability benefits than that to which he is entitled,

4  an overpayment has been made, and the Secretary may recover the overpayment.  <u>Harrison</u>, 746

5  F.2d at 481-82; 20 C.F.R. § 404.501.  However, the Secretary's recovery of the overpayment may

6  be partially or completely waived if the plaintiff establishes that: (1) he is "without fault" for the

7  overpayment, and (2) recovery would either defeat the purpose of the Act or be against equity

8  and good conscience.  <u>Harrison</u>, 746 F.2d at 481-82; 20 C.F.R. § 404.506.[6]  The plaintiff bears

9  the burden of proof to show that a waiver of repayments is warranted.  <u>Harrison</u>, 746 F.2d at 482.

10    In the context of benefit overpayments, "fault" may arise in any of the following

11 three ways: (a) from an incorrect statement made by the recipient that he "knew or should have

12 known to be incorrect," (b) from failure to furnish information that he "knew or should have

13 known to be material," or (c) from acceptance of a payment that he "either knew or could have

14 been expected to know was incorrect."[7]  <u>Anderson</u>, 914 F.2d at 1122 (quoting 20 C.F.R. §

16  [6] Section 404.506 provides in pertinent part: ". . . there shall be no adjustment or recovery in any case where an incorrect payment . . . has been made . . . with respect to an
17 individual: (a) Who is without fault, and (b) Adjustment or recovery would either: (1) Defeat the purpose of Title II of the Act, or (2) Be against equity and good conscience."

19  [7] According to 20 C.F.R. Section 404.507,

20    "Fault" as used in "without fault" . . . applies only to the individual. Although the Administration may have been at fault
21    in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the
22    Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault. In
23    determining whether an individual is at fault, the Administration will consider all pertinent circumstances, including his age,
24    intelligence, education and physical mental condition. What constitutes fault . . . on the part of the overpaid individual or on
25    the part of any other individual from whom the Administration seeks to recover the overpayment depends upon whether the
26    facts show that the incorrect payment to the individual or to a provider of services or to other person, or an incorrect payment

404.507.)

In determining whether the record shows that an incorrect payment resulted from one of these three types of fault, the SSA is to consider "all pertinent circumstances," including the individual's age, intelligence, and physical, mental, educational or linguistic limitations. Anderson, 914 F.2d at 1122-23; 20 C.F.R. § 404.507. This determination is "highly subjective, highly individualized, and highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation." Elliott v. Weinberger, 564 F.2d 1219, 1233 (9th Cir. 1977), aff'd in part and rev'd in part sub nom. Califano v. Yamasaki, 442 U.S. 682, 687-88 (1979). The "fault determination requires a reasonable person to be viewed in the claimant's own circumstances and with whatever mental and physical limitations the claimant might have." Harrison, 746 F.2d at 482.

The SSA must "waive" the repayment of benefit overpayments if the individual sustains the burden that he was (1) without fault in causing the overpayments, and (2) adjustment or recovery of the overpayments would either (a) defeat the purpose of Title II of the Social Security Act or (b) be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506; e.g. Lewin, 654 F.2d at 632 n.1. The waiver analysis thus involves a two-step inquiry. First, the SSA must determine whether the claimant was without fault in receiving or retaining the overpayment. 42 U.S.C. § 404(b); Elliott, 564 F.2d at 1233. If the claimant was at fault, falling within one or more of the three enumerated categories in 20 C.F.R. § 404.507, then

---

made under section 1814(e) of the Act, resulted from:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect;

(b) Failure to furnish information which he knew or should have known to be material;

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have expected to know was incorrect.

the inquiry ends, there being no need to proceed with the second step of the analysis.  If, on the other hand, the claimant shows that he or she was without fault, the SSA must proceed to the second step and consider whether recovery of overpayments would either defeat the purpose of the Social Security Act or be against equity and good conscience.  42 U.S.C. § 404(b); Anderson, 914 F.2d at 1124.

A.   The ALJ Was Not Required To "Articulate" Whether He Used A "Subjective" Or "Objective" Standard In The "At-Fault" Determination

Plaintiff argues that the ALJ failed to "articulate" whether he was using a "subjective standard" or an "objective standard" in determining whether plaintiff was at fault in accepting overpayments.  (Pl.'s Mot. for Summ. J. at 7.)  However, plaintiff fails to cite to any authorities supporting the proposition that the ALJ must explicitly state or articulate whether the standard he applies is subjective or objective.  (Id.)  Indeed, while the ALJ must "consider" all of plaintiff's relevant characteristics, the ALJ need not always make explicit findings on each characteristic.[8]  Anderson, 914 F.2d at 1123 n.2.  Accordingly, the ALJ's failure to expressly state whether he applied a subjective or objective standard is not itself legal error requiring reversal or remand.

B.   The ALJ's "Fault" Determination

The ALJ made two distinct adverse credibility findings, then concluded that plaintiff was not without fault in connection with his receipt of Title II benefits payments during the overpayment period.  (AR 22.)  As described below, the two adverse credibility findings are not supported by "cogent" reasons or substantial evidence.  Both findings are slightly different

---

[8]  While the ALJ must "consider" these factors, the ALJ need not render explicit factual findings as to each factor, *unless* any of the factors bear "any relation to the overpayment" in the particular case at issue.  Anderson, 914 F.2d at 1123 n.2.  In this case, the only "characteristic" that plaintiff clearly alleged bore a relation to the overpayments was plaintiff's ability to understand English, and the ALJ both considered and made an express determination about that "factor."  (AR 21-22 (finding that "appellant was able, in some way, to understand" SSA notices).)

articulations of the same faulty premise: that plaintiff received certain written notices from the SSA prior to the overpayment period.  Because there is no evidence in the record indicating plaintiff received such notices, the ALJ's ultimate conclusion that plaintiff was "not without fault" is unsupported.

1.    <u>The ALJ's First Adverse Credibility Determination Is Not Supported By Cogent Reasons Or Substantial Evidence</u>

The first of the two bases for the ALJ's "fault" determination was the ALJ's finding that he was "unable to credit" plaintiff's representation that "he had to rely on friends and his employer for information on how working affects his receipt of disability insurance benefits, because Social Security filed to communicate with him in Spanish, which is the only language he understands." (AR 21.)  The ALJ discredited this testimony because he found that "the evidence shows that [plaintiff] was able, in some way, to interpret notices from Social Security and to understand what the notices were saying. . . ." (<u>Id.</u>)

The ALJ determined that because plaintiff ultimately "found a method to interpret and understand notices from Social Security . . . in English," plaintiff was capable of understanding "what Social Security was informing him of" regarding the trial work period and the effects of work upon his receipt of benefits.  (<u>Id.</u>)  The ALJ thus determined that plaintiff, allegedly fluent in Spanish but not in English, was nonetheless able to understand notices and correspondence from the SSA and written in English.  (<u>Id.</u>)  Based on this determination, the ALJ also concluded that it was unreasonable for plaintiff to have relied on his co-workers and employer to inform him of his obligations to the SSA.  (<u>Id.</u>)  In short, because the ALJ found plaintiff capable of understanding notices written in English, the ALJ concluded that plaintiff knew the effects of work on his benefits and was thus at fault when he accepted the overpayments between August 1995 and March 1996.

The ALJ's first adverse credibility determination is not supported by "cogent" reason, and nothing in the record contradicts plaintiff's testimony.  <u>See</u> <u>Albalos</u>, 907 F.2d at 874;

13

1  Lewin, 654 F.2d at 635.   One of plaintiff's primary arguments during the administrative hearing

2  was that plaintiff was unable to understand SSA notices written in English, and the ALJ analyzed

3  plaintiff's ability to understand such notices.  (AR 20-21.)  However, plaintiff's ability to

4  understand notices in English is a peripheral issue.  It is peripheral because the record does not

5  contain any notices that both *predate* the overpayment period *and* contain information regarding

6  the trial work period or effects of employment upon receipt of benefits.  Indeed, there are no

7  notices in the record that predate the overpayment period.  Likewise, there are no declarations

8  from SSA personnel confirming that plaintiff actually received such information prior to the

9  overpayment period, and the undersigned's review of the record did not reveal any such

10 evidence.  The ALJ does not cite to any such evidence, and instead generally discusses plaintiff's

11 English comprehension in the abstract.  While the ALJ found that plaintiff was capable of

12 understanding "what Social Security was informing him of," (AR 21), nothing in the record

13 indicates that Social Security "was informing him" about anything, let alone the trial work period

14 or the SSA work rules, prior to the overpayment period.  (Id. (citing Exhs. 3, 5, 8, 15, 16, 22, 23,

15 26, 27, and 28, the earliest of which is dated October 1996, six months *after* plaintiff's period of

16 overpayment).

17         Acting upon an SSA notice and understanding SSA rules are two different

18 matters.  Plaintiff did not deny that he responded to notices the SSA sent him.  However, there is

19 no evidence in the record that plaintiff ever actually received any notices about Title II eligibility

20 for working claimants, the trial work period, or other work rules.  The ALJ did not articulate how

21 plaintiff's ability to interpret SSA notices written in English renders less credible plaintiff's

22 assertion that he did not understand the trial work period or eligibility rules for working

23 claimants.[9]

24 _____

25     [9] Nothing in the record would have informed plaintiff — in English *or* in Spanish —
   about the trial work period or the effects of work on his benefits *prior to* August 1995.  Nothing

26 in the record suggests, for instance, an SSA requirement that a claimant contact the SSA at the

1    The court and the ALJ are bound by the administrative record, and no notices

2  from the SSA to plaintiff regarding the trial work period (or the effects working has upon the

3  receipt of benefits) *and* predating plaintiff's overpayments are found therein.  See Albalos, 907

4  F.2d at 874 (holding that, where ALJ "relied on booklets allegedly given to [the plaintiff] when

5  he applied for benefits . . . and a . . . letter," but "[n]either of these items is in evidence," and  "it

6  is erroneous to rely on items not in the record.").  Thus, the ALJ's discussion of whether plaintiff

7  could have found a "method to interpret and understand notices from Social Security . . . in

8  English" does not support the conclusion that, in August 1995 through March 1996, plaintiff

9  knew what the trial work period was and/or knew the effects of work on his benefits.  Plaintiff's

10  ability to understand Social Security notices *in general* does not evidence plaintiff's knowledge

11  on the particular effects of work on his benefits during the overpayment period.

12    Finding plaintiff able to understand a hypothetical notice that is absent from the

13  record is not a "cogent" reason for discrediting plaintiff's testimony regarding his limited

14  understanding of the effects of work on his benefits.  See Lewin, 654 F.2d at 635 (holding that a

15  rejection of testimony must be "supported by a specific, cogent reason for the disbelief.")  Where

16  the record does not contain evidence that contradicts a plaintiff's testimony, the ALJ may not

17  make arbitrary credibility assumptions in the face of directly contrary evidence.  See Lewin, 654

18  F.2d at 636 (analogizing to an out-of-circuit case, Kendrick v. Califano, 460 F. Supp. 561 (E.D.

19  Va 1978), and noting that where "pamphlets were never introduced into evidence," where "the

20  claimant was never even asked what pamphlet, if any, had been received," the "Secretary cannot

21  arbitrar[ily] assume that the plaintiff understood the Act's application to his particular

22  situation."); Pauloo v. Social Security Administration, No. CV 05-1134-MAN, 2008 WL

23  906365, at *14 (C.D. Cal. Mar. 28, 2008) (unpublished) ("As there is no substantial evidence

24  establishing the substance, or Plaintiff's alleged possession, of any of the documents that

25  _____

26  end of a trial work period to notify the SSA of his or her continued employment.

1    purportedly provided Plaintiff with notice of his reporting obligation, his admission that he failed

2    to read unspecified documents before signing them is irrelevant.  This unclarified admission

3    hardly can be said to establish that Plaintiff was at fault, given the lack of any evidence actually

4    showing that one or more documents signed by him would have provided him with notice if he

5    had read them.") (citing Romero v. Harris, 675 F.2d 1100, 1104 (10th Cir. 1982)).

6            Similarly, nothing in the record suggests plaintiff *solely* relied on co-workers or

7    employers for information regarding Social Security.  (AR 21.)  Instead, plaintiff testified that his

8    own understanding of his obligations to report his work to the SSA was, essentially, *bolstered by*

9    statements made by his co-workers and his employer.  For instance, when asked why he did not

10   inform the SSA about his continued receipt of Title II benefits after having affirmatively reported

11   his working, plaintiff testified "[t]hat was my mistake, because everybody else [other disabled

12   individuals with whom plaintiff worked] was receiving theirs [benefits from the SSA]."  (AR

13   226.)

14          Nothing in the record suggests that the SSA put plaintiff on notice regarding the

15   extent of his reporting obligations *prior to* the overpayment period, and nothing in the record

16   suggests that plaintiff ignored such notices and unreasonably relied upon his co-workers and

17   employer instead.  Accordingly, the ALJ's first adverse credibility finding is not supported by

18   "cogent" reasons and evidence in the record, and thus this particular adverse credibility finding

19   cannot support the ALJ's ultimate "fault" determination.  See Lewin, 654 F.2d at 635-36; Pauloo,

20   2008 WL 906365, at *14.

21          2.      The ALJ's Second Adverse Credibility Determination Is Not Supported
                    By Cogent Reasons Or Substantial Evidence
22

23          The second of the two bases for the ALJ's "fault" determination was the ALJ's

24   finding that he was "unable to credit" plaintiff's testimony that "he was not informed by Social

25   Security of what a trial work period or extended period of eligibility are," and  "unable to credit"

26   plaintiff's testimony that he "had no idea that his work could affect his disability insurance

benefits." (AR 21.)   The ALJ discredited these statements because he found that plaintiff was

specifically "made aware of the effect of work on his benefits when, prior to October 1994,

another person used his Social Security Number to report work and earnings in 1992 and

[plaintiff] had to help Social Security remove those work and earnings from his record." (Id. at

21.)  Because the ALJ disbelieved plaintiff's statements regarding the extent of his understanding

of the effects of work upon his benefits, the ALJ found that plaintiff knowingly accepted

overpayments.  (Id.)

        The ALJ's second adverse credibility determination is not supported by "cogent"

reasons and is not supported by the record.  See Albalos, 907 F.2d at 874; Lewin, 654 F.2d at

635.  Specifically, the ALJ was "unable to credit" plaintiff's assertion that he did not know what

a "trial work period" was, or that his work could affect his benefits, because the "record shows

that Social Security had contacted the appellant in 1992, 1996, and in 1997, about work and

earnings on his Social Security record and how these earnings affected his benefits." (AR 21

(citing Exhs. 7-10, 20 [AR 64-77, 123-25]).)  The ALJ's decision to discredit plaintiff's

testimony was based upon the ALJ's belief that, based on documents in the record, plaintiff had

previously been made "aware of the effect of work on his benefits when, prior to October 1994,

another person used his Social Security Number to report work and earnings in 1992." (Id.)

        Similar to the bases used to make his first adverse credibility finding, the ALJ

erroneously determined that before the overpayment period, plaintiff had both received and

responded to SSA notices regarding how "earnings affected his benefits." (AR 21 (citing Exhs.

7-10, 20 [AR 64-77, 123-25].)  An examination of the exhibits the ALJ cited in support of this

conclusion — Exhibits 7-10 and 20 (AR 64-77, 123-25) — reveals that the actual dates of these

documents are, in fact, 1999 and 2005.  The exhibits did not, as the ALJ believed, *predate*

plaintiff's employment in October 1995 or his overpayment period in August 1995 through

////

////

1   March 1996.[10]  Based on the incorrect dates, ALJ determined that plaintiff could be charged with

2   constructive knowledge of the contents of the cited exhibits during the overpayment period.  (AR

3   21.)  The ALJ then concluded that plaintiff knew or should have known that his continued receipt

4   of benefits during that period might have been improper.  (Id.)

5          When the accurate dates of the cited exhibits are considered, the record does not

6   support the ALJ's conclusion that plaintiff dealt with the SSA regarding the *precise issue* of "the

7   effect of work on his benefits" *prior to* August 1995 through March 1996.  See Lewin, 654 F.2d

8   at 635-36; Newman, 2010 WL 2523948, at *5-6 (holding that ALJ's errors regarding the facts in

9   the record "undermined" his adverse credibility determinations and ultimate finding, neither of

10  which were actually supported by the substantial evidence).  Accordingly, the ALJ's adverse

11  credibility determination was based on the ALJ's mistaken view that certain SSA notices

12  *predated* the period of overpayment in question.  When the correct dates of the documents are

13  taken into consideration, the record does not support the ALJ's determination that plaintiff "was

14  informed about how his work and earnings affected his eligibility" for benefits in August 1995

15  through March 1996.  (AR 22.)

16         The ALJ's determination also appears to have been based on the ALJ's

17  assumption that plaintiff understood the Act and its rules regarding the interplay between work

18  and earnings, as well as the trial work period.  But courts have noted that the Act is complicated

19  and difficult even for the knowledgeable to comprehend.  See Lewin, 654 F.2d at 634-36

20  (without proof to the contrary, there was no basis for concluding that claimant understood

21

22         [10]  As plaintiff correctly notes, the ALJ based his credibility determination on "erroneous"
    facts regarding the timing of plaintiff's interactions with the SSA regarding a misappropriation of
23  his Social Security Number.  (Pl.'s Mot. for Summ. J. at 8 (citing AR 64-77, 123-25).)  The ALJ
    mistakenly conflated the years plaintiff's Social Security Number was misappropriated with the
24  years-later communications between plaintiff and the SSA regarding that misappropriation.
    (Compare AR 21 (citing Exhs. 7-10, 20 [AR 64-77, 123-25] in support of the conclusion that
25  plaintiff had communications with the SSA regarding the "effect of work on his benefits" in
    1994, prior to his overpayments beginning in August 1995) with the 1999 and 2005 dates of the
26  reports contained in the record at Exhs. 7-10, 20 [AR 64-77, 123-25].)

1    instructions because the "Act is an exceedingly complex and detailed law, and the

2    [Commissioner] cannot arbitrarily assume that plaintiff understood its application to his

3    particular situation.")  The claimant's "good faith" is critical to the fault analysis.  Yamasaki, 442

4    U.S. at 697 (citing 20 C.F.R. § 404.507).  Because the ALJ's adverse credibility determination is

5    based on an erroneous view of the dates of cited exhibits and on an unsupported assumption that

6    plaintiff understood how the Act applied to his particular circumstances, the ALJ's determination

7    is not supported by "cogent" reasons.  Nothing in the record supports the ALJ's implicit

8    determination that plaintiff's awareness of his obligation to report a change in his employment

9    status meant plaintiff was *also* aware of the nature and extent of the effects of working upon his

10   receipt of benefits such that plaintiff knew the SSA was mistaken in ceasing some but not all of

11   his benefits payments.  (AR 22.)  Accordingly, the ALJ's second adverse credibility

12   determination is not supported by "cogent" reasons and not supported by substantial evidence.

13   See Albalos, 907 F.2d at 874; Lewin, 654 F.2d at 635; Newman, 2010 WL 2523948, at *5-6.

14                  3.    The ALJ Must Specify The Amount Of Weight Given To Each Item Of
                         Evidence In Making His Credibility Determinations

15

16          As discussed above, the ALJ made two discrete adverse credibility determinations

17   and stated his reasons for each.  As also discussed above, these reasons were either based on

18   erroneous readings of the dates of documents in the record, or were based upon the ALJ's

19   assumptions and not supported by evidence in the record.  See e.g., Pauloo, 2008 WL 906365, at

20   *14-16 (rejecting ALJ's adverse credibility determinations because they rested solely upon the

21   ALJ's "conjecture and a patently deficient record," and the ALJ's assumptions about the contents

22   of notices utterly absent from the record); Newman, 2010 WL 2523948, at *5-6.  To the extent

23   the ALJ relied on *additional* unstated grounds for discrediting plaintiff's testimony, such implicit

24   grounds cannot properly support the determination.  As part of an explicit credibility

25   determination, the ALJ is required to "indicate the amount of weight given to various items of

26   evidence."  Albalos, 907 F.2d at 874.

1    Plaintiff correctly notes that the ALJ "makes no findings that notices or

2    information regarding work rules or trial work period were ever sent to Plaintiff in English or

3    Spanish." (Pl.'s Mot. for Summ. J. at 10-11.)  Plaintiff also correctly notes that, although the

4    ALJ did not clearly articulate a basis for his "assumption," the ALJ nonetheless found it

5    "reasonable to assume that the appellant was informed about how his work and earnings affected

6    his eligibility for disability insurance benefits . . . ."  (AR 22.)  The evidentiary bases the ALJ

7    articulated in support of his "assumption" were erroneous for the reasons discussed above.  If the

8    ALJ's "assumption" arose for reasons other than those discussed above, the ALJ's decision did

9    not clearly articulate the evidence giving rise to such assumption and did not specify the "amount

10   of weight" given to such evidence.  See Albalos, 907 F.2d at 874.

11   The Commissioner has suggested additional grounds for the ALJ's adverse

12   credibility determinations, despite the fact that the ALJ himself did not articulate those grounds.

13   (E.g., Def.'s Opp'n & Cross-Motion for Summ. J. at 7, 9 n.2 (discussing plaintiff's alleged

14   "inconsistent statements" as supporting the ALJ's adverse credibility determinations).)  The

15   undersigned has not considered the Commissioner's newly-minted reasons because the court's

16   review is constrained to the reasons asserted by the ALJ, and the ALJ did not clearly find that any

17   of plaintiff's particular statements were conflicting.  See Orn v. Astrue, 495 F.3d 625, 630 (9th

18   Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and

19   may not affirm the ALJ on a ground upon which he did not rely."); accord Tommasetti v. Astrue,

20   533 F.3d 1035, 1039 n.2 (9th Cir. 2008) (declining to review reasons provided by the district

21   court in support of the ALJ's credibility decision that were not "expressly relied on" by the ALJ

22   during the administrative proceedings) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

23   2003) ("We are constrained to review the reasons the ALJ asserts.")); Robbins, 466 F.3d at 884

24   n.2.  Even if the Commissioner's proffered grounds lent support to the ALJ's determinations, the

25   ALJ did not clearly base his determinations on such grounds and certainly did not "indicate the

26   amount of weight given to" such items of evidence.  See Albalos, 907 F.2d at 874.

4.     The ALJ's "Fault" Determination Is Not Supported By Substantial Evidence, And The Record Confirms Plaintiff Met His Burden Of Showing He Acted Without Fault In Connection With The Overpayments

Based on his two adverse credibility findings and the reasons he gave for them, the ALJ concluded that "it is reasonable to assume that"[11] plaintiff was "informed about how his work and earnings affected his eligibility," such that plaintiff was at fault in accepting benefits payments during the overpayment period.  (AR 22.)  However, as described above, the credibility determinations are not supported by cogent reasons or substantial evidence.  Accordingly, the Commissioner's "at fault" determination is not supported by substantial evidence.

For similar reasons, the undersigned finds that plaintiff has met his burden of proving a lack of fault in accepting the overpayments at issue.  Nothing in the record conflicts with plaintiff's testimony regarding his good faith, his understanding that he had met his reporting obligations, his lack of understanding regarding the trial work period and how working would affect his Title II benefits, and his mistaken assumption that, after he reported his work status, the SSA halted his SSI payments but intentionally continued his Title II payments. Plaintiff consistently denied that he was aware of his obligation to report continued Title II benefits payments during the overpayment period, and gave uncontroverted testimony about his lack of knowledge on this front.  (AR 55, 99, 135-36, 140, 215-18.)  Based on the above-noted evidence, the record confirms that plaintiff met his burden of proving that he was unaware that his receipt of Title II benefits after August 1995 was improper, and thus that he was not at fault in connection with the overpayments within the meaning of 20 C.F.R. 404.507.

5.     The Court Exercises Its Discretion To Reverse The ALJ's Decision

Whether to reverse or remand is an issue within the court's discretion.  See Lewin, 654 F.2d at 635-36; Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000); McAlister v.

---

[11]   The ALJ cannot "arbitrarily assume that the plaintiff understood the Act's application to his particular situation," especially where the plaintiff testified that she did not understand the Act.  See Lewin, 654 F.2d at 636.

1   Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where the "record has been thoroughly developed,"

2   there is "no reason for remand" for further determinations by the ALJ.  See Lewin, 654 F.2d at

3   635-36; Beneke v. McCarthey, 379 F.3d 587, 593 (9th Cir. 2004) (remand unnecessary where it

4   would create a "heads we win; tails, let's play again" system of disability benefits adjudication);

5   Pauloo, 2008 WL 906365 at *18-19.  The court has discretion to direct the entry of judgment for

6   the claimant where no useful purpose would be served by further administrative proceedings,

7   where the record has been sufficiently developed, and where remand would simply delay the

8   judgment to which the claimant is entitled.  See Lewin, 654 F.2d at 635-36.  Here, as in Lewin,

9   there was at most "a scintilla of evidence indicating some fault on [plaintiff's part, but it is

10  nothing more," and thus reversal rather than remand is appropriate.  See id. (reversing ALJ's

11  "fault" determination in connection with overpayments because the record was sufficiently

12  developed and because "this case has gone far enough.")  Accordingly, the Commissioner's

13  decision is reversed for lack of substantial evidence.  See id.

14          C.      The ALJ Did Not Reach The Second Step Of The Waiver Inquiry: Whether
                    Repayment Would Defeat The Purpose Of The Act Or Be Against Equity And
15                  Good Conscience

16          Because the ALJ found plaintiff was at fault, he made no factual findings as to the

17  second step of the waiver inquiry.  See Anderson, 914 F.2d at 1124.  In order to qualify for a

18  waiver, a plaintiff must also show that requiring repayment would either defeat the purpose of

19  Title II of the Social Security Act, or, alternatively, would be against equity and good conscience.

20  42 U.S.C. § 404(b);  20 C.F.R. §§ 404.506(a); 404.508.

21          The relevant regulation, 20 C.F.R. § 404.508(b), provides that recovery of an

22  overpayment will defeat the purposes of the statute where the claimant "needs substantially all of

23  his current income (including Social Security monthly benefits) to meet current ordinary and

24  necessary living expenses."[12]

25  ───────────────────

26          [12] "An individual's ordinary and necessary expenses include: (1) Fixed living expenses,
    such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life,

1          While the ALJ did not attempt to determine whether plaintiff's repayment would

2   defeat the purpose of Title II, the record reveals as much.[13]  Plaintiff has demonstrated that he

3   needs "substantially all" of his household's income to meet his necessary living expenses.  See

4   20 C.F.R. § 404.508(b).  Specifically, the record reveals that at the time of his hearing before the

5   ALJ, plaintiff's monthly income was $800 per month, and his wife's income was $1,185 per

6   month.  (AR 180, 182, 211-12, 229-31.)  The total income from plaintiff's household was $1,985

7   per month, while his household's monthly expenses were $1,960.10 per month, leaving the

8   couple with less than $25 per month for emergencies.  (AR 182.)  Plaintiff testified that he is not

9   employed and that his household relies solely upon his wife's income and his benefits.  (AR 211-

10  12, 229-31.) The record also reflects that plaintiff has already spent the overpayment amounts.

11  (AR 135 ("I don't have it").)  Internal SSA documents in the record also confirm that in 2001, an

12  SSA representative concluded that plaintiff had "proven expenses outweigh income" and that he

13  "cannot afford to repay" in connection with an unrelated discrepancy in payments from someone

14  else using his Social Security Number.  (AR 110.)  Further, and more recently, plaintiff has

15  qualified to proceed in forma pauperis in the instant action, and his filing fees have been waived

16  due to his declaration of financial need under penalty of perjury.  (Dkt. Nos. 4-5.)

17         Taking plaintiff's financial circumstances into account, recovery of the $8,236

18  overpayment would defeat the purposes of Title II.  20 C.F.R. § 404.508(b); see Pauloo, 2008

19  WL 906365 at *16-17 (where the record included plaintiff's sworn testimony that he spent the

20  overpayment shortly after receiving it and that he needed whatever monies he had for his

21

22  accident, and health insurance including premiums for supplementary medical insurance benefits
    under title XVIII), taxes, installment payments, etc.; (2) Medical, hospitalization, and other
23  similar expenses; (3) Expenses for the support of others for whom the individual is legally
    responsible; and (4) Other miscellaneous expenses which may reasonably be considered as part
24  of the individual's standard of living."  20 C.F.R. § 404.508(a).

25      [13]  To the extent the undersigned uses the present tense in referring to or describing
    plaintiff's alleged financial condition, the undersigned clarifies that such references are to
26  plaintiff's financial condition at the time of the ALJ's or Appeals Council's decision(s), unless
    otherwise indicated.

1    ordinary and necessary living expenses, plaintiff met his burden of establishing that recovery of

2    the overpayment would defeat the purposes of Title II).  Accordingly, the record confirms that

3    plaintiff has demonstrated that the SSA's recovery of the overpayments at issue would defeat the

4    purposes of Title II, and therefore a waiver is appropriate.[14]

5           Where the court remands on the "fault" determination, it may also decide to

6    remand on the issue of whether a repayment would defeat the purpose of Title II. E.g. McCarthy,

7    221 F.3d at 1127.  Again, however, whether to reverse or remand is an issue within the court's

8    discretion, and as discussed above, here a reversal of the ALJ's "fault" determination is

9    appropriate.  See Lewin, 654 F.2d at 635-36; Harman, 211 F.3d at 1178; McAlister, 888 F.2d at

10   603.  The "record has been thoroughly developed" regarding plaintiff's income and expenses,

11   and there is "no reason for remand" for the ALJ's determination of the "waiver" issue.  See

12   Lewin, 654 F.2d at 635-36; Beneke, 379 F.3d at 593; Pauloo, 2008 WL 906365 at *18-19

13   (reversing on the "defeat the purposes of Title II" determination rather than remanding for further

14   determinations by the ALJ on that issue).  Indeed, the ALJ had the opportunity to make a

15   determination on this matter, but declined to do so due to his determination on the threshold

16   "fault" issue.  (AR 22.)

17          The court finds that plaintiff has met his burden and that requiring his repayment

18   would defeat the purposes of Title II, and, accordingly, that a waiver of repayment is appropriate

19   in this case.  The Commissioner shall reimburse to plaintiff of any monies withheld from his

20   _____

21          [14]  The undersigned would also find that plaintiff has demonstrated that "equity and good
     conscience" would be offended by requiring his repayment.  The Ninth Circuit Court of Appeals
22   has recognized that in establishing the "equity and good conscience" standard, Congress
     "intended a broad concept of fairness to apply to waiver requests, one that reflects the ordinary
23   meaning of the statutory language and takes into account the facts and circumstances of this
     case."  Quinlivan v. Sullivan, 916 F.2d 524, 526 (9th Cir. 1990).  Because the undersigned finds
24   that plaintiff's repayment would defeat the purposes of Title II, however, the undersigned need
     not discuss the "equity and good conscience" issue in detail.  It suffices to say that, considering
25   plaintiff's particular circumstances and the fact that nothing in the record directly contradicts
     plaintiff's testimony regarding his lack of knowledge regarding the trial work period and his
26   entitlement to Title II benefits following his report of employment, requiring plaintiff's
     repayment would offend equity and good conscience.  See Lewin, 654 F.2d at 635-36.

                                                    24

1   current benefits if the Commissioner has withheld any such monies as recovery for the

2   overpayments.  See Quinlivan, 916 F.2d at 527; Pauloo, 2008 WL 906365 at *19.

3   V.      CONCLUSION

4               Based on the foregoing, IT IS HEREBY ORDERED that:

5           1.      Plaintiff's motion for summary judgment is granted;

6           2.      The Commissioner's cross-motion for summary judgment is denied;

7           3.      The ALJ's decision is reversed;

8           4.      Pursuant to sentence four of 42 U.S.C. § 405(g), the Clerk of the Court is

9   directed to enter a judgment in favor of plaintiff, and remanding this matter to the Social Security

10  Administration for further administrative action consistent with this Order, including:

11                  a.      A grant of plaintiff's Request for Waiver of Overpayment; and

12                  b.      A reimbursement to plaintiff of any monies withheld from his

13                          current benefits if the Commissioner has withheld any such monies

14                          as recovery for the overpayment.

15  DATED:  July 14, 2011

16

17                                  _____

18                                  KENDALL J. NEWMAN
                                    UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26